STATE EX REL. REYNOLDS, Attorney General, Respondent, vs. McCUTCHIN and others, Appellants.

*November 9—December 8, 1931.*

*Charlton H. James* of Dodgeville and *N. S. Boardman* of Mineral Point, for the appellants.

For the respondent there was a brief by the *Attorney General, Frank W. Kuehl,* assistant attorney general, attor-

neys, and *Brindley & Brewer* of Richland Center, special counsel for Richland county, and oral argument by *Fred M. Wylie,* deputy attorney general, and *E. E. Brindley.*

FRITZ, J. Proceedings under sec. 87.04, Stats. 1927 (which, so far as now material, is set forth in the margin),[1] were commenced before the state highway commission by a petition filed by Richland county for the construction of a new bridge on state trunk highway No. 130, across certain navigable waters known as the Wisconsin river, which at that location includes several channels and waters and water beds forming the same or connected therewith at flood stage,

---

[1] (1) Whenever any county, by its county board shall file a petition with the state highway commission setting forth that said county desires the construction or reconstruction of a bridge on the state trunk highway system, or on a road or street within a city of the fourth class, forming a direct connection between portions of the state trunk highway system, across any navigable waters in said county, or on which said county may border, and that said construction or reconstruction is necessary, the state highway commission shall fix a time and place for hearing and hear said petition in the manner provided in section 87.02.

(2) If the state highway commission, after such hearing shall find that said construction or reconstruction is necessary, it shall locate the place at which the bridge should be constructed or reconstructed, and if the bridge at such location will necessarily be more than three hundred feet long, not including approaches, or is required by the laws of the United States to make provision for navigation by means of a swing or lift bridge, the said bridge project shall be constructed or reconstructed at the expense of the state and counties especially benefited as hereinafter provided. The commission shall determine the character and kind of bridge adapted to the location, shall determine which counties are especially benefited thereby and the proportionate special benefit of each county, shall estimate the cost of the bridge project, and shall file with the county clerk or clerks of the county or counties in or between which said bridge project is to be constructed or reconstructed its findings, including a description of the location of such bridge project, the character and kind thereof and the estimated cost of construction or reconstruction, including the cost of any approaches, embankments or other necessary appurtenances, the cost of any new right of way required, the purchase or acquirement of any existing structure and such other cost as shall be a necessary portion of the bridge project.

all of which are largely within Richland and Sauk counties, excepting that the center line of the south or main channel of said river forms the boundary line between Richland and Sauk counties on the north side thereof, and Iowa county on the south side thereof. At that location there had been a highway across the waters of the Wisconsin river and its bottom lands for many years prior to its final official designation as state trunk highway No. 130. As that highway proceeded northward in Iowa county it crossed a modern steel bridge, 450 feet long, over the south channel of the Wisconsin river. At the center line of that south channel, that bridge crossed the boundary line between Iowa county

(3) The commission shall, at the time of filing its said findings, also certify to the said county clerk or clerks the proportion of the cost of said bridge project to be borne by the county or counties deemed especially benefited, and shall certify to the state treasurer and secretary of state the amount to be paid by the state as its portion of the cost thereof.

(4) The county, or counties, shall pay fifty per cent. of the cost of the project, but no county shall be required to pay more than one hundred thousand dollars toward the cost of any project where only one county is benefited, or more than fifty thousand dollars where more than one county is especially benefited. The balance of such cost shall be paid by the state from the appropriation made in subsection (5) of section 20.49. If more than one county is deemed especially benefited the counties' shares shall be apportioned to each in proportion to the special benefits respectively derived as determined by the state highway commission. Upon receipt of the certification by the state highway commission of the amount necessary to be provided by any county as its share of the cost of any construction or reconstruction pursuant to this section, the county clerk shall present the same to the county board at its next annual or special meeting and it shall then be the duty of the said county board to provide the amount to be paid by the county. The amount so to be provided by the county may be provided by appropriation, tax or bonds, or in any manner by which funds may lawfully be made available for road or bridge construction, and the issue of bonds need not be referred to the electors. The county board may, if it sees fit, assess not to exceed forty per cent. of its share of the cost of any construction or reconstruction, pursuant to this section, as a special benefit, against the municipality or municipalities deemed, by the said board to be especially benefited by the bridge project and determine the proportions, if more than one municipality is deemed especially benefited. . . .

on the south, and Richland and Sauk counties on the north. The portion of that bridge north of that center line of the south channel was on the north and south boundary line between Richland and Sauk counties. From the north end of that bridge, that highway extended due north for 1,865 feet over Long island, which consisted of 230 acres, and was wholly within Richland and Sauk counties. In times of flood most of that island was covered by water, although it was partly wooded. However, those 1,865 feet of roadway were on an embankment, which was about nine feet above the natural surface, and the flood waters did not reach up to that highway. At the northern end of those 1,865 feet of highway it angled off in a northwesterly direction for a few hundred yards, and then turned and continued north-ward in Richland county across an old and inadequate bridge over a slough, which was the north channel of the Wisconsin river.

After hearings held during the course of the proceedings before the state highway commission, that body ordered a relocation of that portion of state trunk highway No. 130 which was to the north of the north end of the 1,865 feet of roadway across Long island. In furtherance of that relocation the commission ordered a new project which is to extend due north from the north end of the 1,865 foot stretch of highway on Long island, for 1,400 feet along the boundary line of Richland and Sauk counties; and all of which is over 2,000 feet north of the north boundary of Iowa county. That new project necessitates the construction of two new bridges, 455 feet and 80 feet long, respectively, across the north channel of the Wisconsin river, and a creek, which is 553 feet north of that north channel but which eventually empties into that channel. That project also necessitates the construction of new roadway between and as approaches to those new bridges, and the total cost was estimated at $100,000. The commission concluded that the

new 1,400 feet project, together with the 1,865 feet of existing roadway to the south and the existing 450-foot bridge, both of which were found adequate and were not to be replaced or reconstructed, constituted, within the contemplation of sec. 87.04, Stats., the construction of but a single bridge across navigable waters on which Iowa county bordered; and that the proportionate special benefit of such bridge project to Iowa county was thirty-seven per cent. On that basis the commission duly certified, in accordance with sec. 87.04, Stats., that the proportion of the cost to be paid by Iowa county was eighteen and one-half per cent. or $18,500. Upon the refusal of the county board of Iowa county to provide funds for that purpose, resort was had to these *mandamus* proceedings.

Appellants contend that sec. 87.04, Stats., does not authorize an assessment of benefits against a county unless the improvement is within or borders upon the county. The material words on the point now in controversy are: "Whenever any county . . . shall file a petition . . . setting forth that said county desires the construction or reconstruction of *a bridge . . . across* any *navigable waters in* said county, *or on which* said county *may border,*" the state highway commission shall provide for a hearing. If the commission shall find that such work is necessary, "it shall locate *the place at which the bridge* should be constructed or reconstructed, and if *the bridge at such location* will necessarily be more than three hundred feet long, not including approaches, . . . the *said bridge project* shall be constructed or reconstructed at the expense of the state and counties *especially benefited* as hereinafter provided. The commission shall determine . . . which counties are especially benefited thereby and the proportionate special benefit of each county, shall estimate the cost of *the bridge project,* and shall file with the county clerk or clerks of the county or counties *in or between which said bridge project* is to be

constructed or reconstructed its findings, including . . . the estimated cost of construction or reconstruction, including the cost of any approaches, embankments or other necessary appurtenances, the cost of any new right of way required, the purchase or acquirement of any existing structure and such other cost as shall be a necessary portion of *the bridge project.*"

Although there is no express limitation in the statute as to what counties the commission may take into consideration in determining "which counties are especially benefited," the words of the statute immediately following, and which relate to the filing of the commission's findings, provide for such filing with the county clerks of only the counties *"in or between which* said bridge project is to be constructed." As there is no provision for such filing in any other counties, although they may also be especially benefited, it is evident that it was not contemplated that the commission's determination as to special benefits was to extend to any counties other than those "in or between which" the bridge is to be constructed. In view of the legislative omission to prescribe means of notifying all counties which the commission might consider benefited, it is manifest that the legislature did not intend to confer upon the commission unlimited discretion to assess benefits against all counties which would be benefited in fact. Regardless of whether other counties may be especially benefited by such bridge project, the only statutory provision for any such filing is with the clerks of only the counties "in or between" which the bridge project is to be constructed. Those words "in or between" obviously refer to the physical location of the new bridge project. Unless the physical location of that new project is actually "in or between" the counties assessed, the highway commission is without any authority or jurisdiction to include in its assessment counties which are not so situated. As to such a county the assessment is absolutely void. That conclusion

applies, in this case, to Iowa county, even though the commission endeavored to establish a basis for its assessment against Iowa county by theoretically extending the project so as to include the 1,865 feet of existing highway and also the 450-foot bridge, both of which, however, are clearly beyond the actual physical location of the new bridge project which is to be constructed, and are not included in the new work of construction or reconstruction. The actual physical location of the only bridge project which the commission has determined to be necessary is over 2,000 feet beyond the north boundary line of Iowa county. That boundary line is in the center of the well defined main channel of the Wisconsin river. That channel has been spanned for some years by a modern bridge, which affords ample means of passage along state trunk highway No. 130, and for the purchase of which Iowa county duly contributed its share. That is the only bridge which is necessary for that highway, at that location, to cross the navigable waters in Iowa county or on which it borders. Upon crossing that 450-foot bridge northward bound, that highway continues across Long island within the limits of Richland and Sauk counties, and wholly beyond the north boundary of Iowa county, on an adequate roadway on an embankment, which is always above the crest of flood waters, for a distance of 1,865 feet before the point is reached at which the first work of construction for the new bridge project is actually to commence; and from which the new bridge project is to extend northward only.

Long island has been a substantial tract of 230 acres of land ever since it was meandered and platted into fractional lots, when the original government survey was made, and, as it is about one and one-quarter miles long, it effectively separates for that distance the other waters in the Wisconsin river basin from the navigable waters of the south channel. The existing 1,865 feet of roadway across that island separate, to that extent, the new bridge project from the existing

450-foot bridge across the navigable waters in Iowa county or on which it borders. In view of those physical conditions, the actual physical location of the new bridge project is such that it was not within the power of the state highway commission under provisions of sec. 87.04, Stats. 1927, to make any assessment against Iowa county, and the petition herein should have been dismissed.

*By the Court.*—Judgment reversed, with directions to dismiss the petition.